IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK

BRUD ROSSMANN, ESQUIRE
C/O SAWTOOTH CAPITAL LLC
ATTN: BRUD ROSSMANN
5777 MISSION CENTER RD
APARTMENT A1A
SAN DIEGO, CA
TEL. 202-534-0693
EMAIL. BROSSMANN1@YAHOO.COM

15CV9560

RECEIVED
SDNY PRO SE OFFICE
2015 DEC -7 PM 3:52

    Plaintiff Pro Se,

V.

                                CIVIL NO. _____

ANTHONY SCARAMUCCI
Skybridge Capital
Headquarters:
527 Madison Avenue, 16th Fl.
New York, NY 10022.
P: +1.212.485.3100.

and,

JOHN DOE-1,
JOHN DOE-2,
AND JOHN DOE-3

    Defendants

1

# COMPLAINT

## I.

### INTRODUCTION

1. The Defendant, Brud Rossmann, a former decorated Trial Attorney of the U.S. Department of Justice, receiving "Outstanding" performance reviews when handling both National Security matters and Billion Dollar cases, Honors graduate of Harvard Law School, (cum laude, 1989), excellent reviews when managing a leading investment fund, and recipient of a community service award from the Attorney General of the United States of America for his volunteer work in the African American community of Anacostia, MD, outside of Washington, DC, with recent strong to exceptional reviews from every reviewing source, professional, academic, and psychological, and without a single qualified exception recently or ever, brings this *Complaint*.

2. Defendant has engaged in scaled theft of Brud Rossmann's property for years, using primarily cyberspace or other network based tactics, as confirmed by a host of data, many ground level natural person witness statements, official IRS and New York State findings and rulings, and even admissions against interest by Defendant.

3. The IRS has ruled for Brud Rossmann and against Defendant on many occasions.

4. The Theft and Casualty Loss bases included real property and personal property stolen or destroyed by Defendant over many years.

5. New York State official rulings for Brud Rossmann on alternative bases, as well as Tax authority findings in Virginia, DC, or New York State also have confirmed the essential allegations of Brud Rossmann's claims against Defendant.

6. Defendant, in person and via agency of SAIC, War Room Research and other government contractors, has even admitted to liability in certain instances. He has admitted to scaled theft and financial and other liability to Brud Rossmann.

7.  Under common law conversion and fraud doctrine, the two (2) claims pled first, the Defendant has both GAAP based liability to Brud Rossmann, and related tax fraud or other tax accounting based liability evident in claims and evidence still before the IRS.

4

8. The Defendant has been engaged directly, after having admitted Defendant's liability, given written and other notice of the claims in writing and several occasions, and toward non- litigation resolution of this matter. The Defendant refuses to negotiate or even engage on the proven theft and other injuries clearly attributable to Defendant given prior official findings and rulings, and the conclusive evidence known to Plaintiff and to Defendant.

9. The Plaintiff seeks compensatory damages in the amount of Ten Million Dollars ($10,000,000.00), as well as injunctive and declaratory relief.

II.

### JURISDICTION AND VENUE

12. This is a civil action over which original jurisdiction is vested in this Court by 28 U.S.C. 1331, 1332, and 1343.

13. Diversity jurisdiction exists under 28 U.S.C. 1332. The Plaintiff has established a residence as well as sited related property interests in this jurisdiction, real property, held in his name or for his benefit (word choice), on the tax accounting and other property bases reported by the government.

14. The prior findings and rulings of the IRS as of 2010 extended his claims under tax fraud or related bases alone to Ohio, Virginia, New York, New Jersey, the Applicable, Arizona, Florida, California, Delaware, and other states.

15. Derivative expressions of Brud Rossmann's real property or personal property as booked tax bases, derivative assets, such as liquidation value held in cash balances on the sale or other monetization of Brud Rossmann's property, and other property "derivatives" have been previously evidenced in official JP Morgan Chase subsidiary accounts in Brud Rossmann's name, the cash unreturned, and other property never returned to Brud Rossmann either. Defendant has been implicated in these thefts or related injuries to Brud Rossmann's property interests.

16. This Court has pendent or supplemental jurisdiction pursuant to 28 U.S.C. 1367 over all other claims that are so related to claims within its original or exclusive jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17. Where the instant causes of action ultimately define an action in rem or quasi in rem, to include property interests held in bank accounts, via land records recordings, or in derivative instruments reflecting the Financing of such property or rights to continued financing or re-financing, jurisdiction is also supported by the enabling statute, the Rules Enabling Act, and Federal Rule of Civil Procedure Supplemental Rule A and Rule E. Actions in Rem and Quasi in Rem: General Provisions.  Colorable factual bases for this further jurisdictional basis are pled below.

18. The exclusively Federal nature of many of the claims presented below supports Federal court jurisdiction to the exclusion of state court jurisdiction – at least in the first instance. Diversity jurisdiction also exists. Pendent jurisdiction or supplemental Federal jurisdiction is well-supported on grounds of a "common nucleus of operative fact" -- as established by concurrent timing, largely identical actors, the identical underlying transactions in question, and related evidentiary bases defining casualty and theft events across jurisdictions and various actors in this jurisdiction and others.

19. Venue is appropriate in this Court under 28 U.S.C. 1391.

### III.

### PARTIES

#### *Brud Rudolph Rossmann, Esquire*

20. Plaintiff is a successful professional, graduate of Harvard Law School (cum laude, 1989), and former Trial Attorney of the U.S. Department of Justice who received "Outstanding" reviews while handling Billion Dollar cases and National Security matters. Compare Exh. Sec. 1

21. Most recently, he has received Excellent reviews serving as Director, Economic Development, for a

8

Washington, applicable non-profit, has earned Excellent or better reviews by every reporting client when serving as Of Counsel for a New York law firm, a "100" average when taking classes toward certification as a Microsoft Certified System Administrator (MCSA), a true "A" average while pursuing an MBA in the local MBA program, and other proof of current skills, acumen, work ethic, character, and work product.

22.     He has no negative overall recent reviews to his knowledge, has no mental health issues save a concentration/sleepiness condition, and otherwise suffers unprecedented levels of neurological trauma, disease, or other medical hardship conditions. Exh. Sec. 3.

23.     His medical hardship best explains his prose and in forma pauperis status consistent with prior IRS findings and rulings, and recent findings of medical disability.

*Plaintiff Pro Se's Medical Hardship*

24. Finally, Plaintiff Pro Se has been hobbled by a series of debilitating neurological and other medical conditions since the time of the transactions pled herein, to include (i) untreated or untreatable narcolepsy, cataplexy, arthritis, hip dysplasia, and related conditions as exacerbated by (ii) medical malpractice involving neurologists and organic brain disorders.

25. Surgery to remove a cancerous tumor from Plaintiff's brain or skull is one example.

26. He has no mental health issues.

**Defendant**

27. Defendant resides in this jurisdiction. He also has property in this jurisdiction.

28. Defendant is a self-confessed fraud. Though Google name search reporting no longer lists prior claims against her for fraud, her former investors or other business partners or others have successfully sued her for Fraud, or related theft.

10

29. Such charges and suits unknown to Brud Rossmann, Defendant as principal or in agency simultaneously contracted with Brud Rossmann for investigative services, including network/internet intrusion detection services, or otherwise transacted with Brud Rossmann on matters involving (a) network based investigative services, (b) artificial human intelligence R&D, (c) robotics intelligence R&D, or (d) other network based research, development, or investigation services.

30. Defendant as principal or in agency is a network technologist, with a long history of network based operations, hacking, gaming, spoofing, forgery, fraud, or email/file/online account misreporting and corruption tactics used in simulation, emulation, and private sector profit-making endeavors.

31. Defendant or his agents used to be employed by a DOD subcontractor or other DOD affiliated entities, but apparently was terminated for cause, on bases of theft, fraud, or other crime resulting in the termination of security clearances, among other sanctions.

32. Defendant has confessed to liability in prior discussions with Brud Rossmann, and has been implicated as liable in official IRS and New York State official proceedings, written reporting, including internal Forms 1099 or 1098 generated by the IRS itself 6/23/05 or other dates, among other official reporting, sources, or findings.

33. Defendant has refused to resolve this matter expeditiously and lawfully outside of a litigation setting. Alternative dispute resolution proposed by Brud Rossmann for some time has been ignored or run from. Defendant has paid only lip service through intermediaries to her supposedly serious intent to engage and resolve this matter finally and completely.

IV.

**FACTUAL BACKGROUND**

34. The crux of this initial complaint is a series of online or network effected theft and other torts, with scaled theft and other injury to Brud Rossmann's personal reputation or other property proven in a series of prior IRS Theft and Casualty loss based refund claim proceedings, civil lawsuits, and other proceedings.

35. Brud Rossmann was paid on an unprecedented first three (3) of three (3) the IRS theft or casualty loss based refund claims when such claims are generally disfavored at approximately 90% levels The a priori odds for Brud Rossmann's claims were about 1 in 1000 when his first three (3) loss claims were first presented, or 1/10 x 1/10 x 1/10 = 1/1000. The IRS has never awarded three (3) such loss based refund claims before or ever in its history.

36. The means used to effect such losses, theft and other casualty were network based hacking, spoofing, fraud, forgery, and various violations of 18 USC 1030.

37. The theft and other casualty were reflected in electronically transmitted forms 1099-S to the IRS fraudulently in Brud Rossmann's name, dating back several years, and timed to the Real Estate Bubble and other outlier financial return periods.

38. Stepped up tax bases under IRC 754 "mixing bowls" were some of the tax fraud effected in Brud Rossmann's name. Brud Rossmann was acquitted after several protracted IRS investigations, not only his innocence proven, but the guilt of those operated in his name under abused Powers of Attorney and other unlawful vehicles.

39. The thieves involved, including defendant, visited several other casualties on Brud Rossmann, including falsely reporting Brud Rossmann as a thief or the tax fraud.

40. Defendant then concealed Defendant's theft and other violations of law, refusing documentation and work product due Brud Rossmann over many years despite contractual and other legal obligations to produce such information.

41. The Defendant actively engaged in one form of cover up after another, losing Brud Rossmann's correspondence, and other property, while claiming no notice of Brud Rossmann's legal claims against Brud Rossmann.



~~Equitable Tolling, Estoppel~~

## VI.

### CAUSES OF ACTION

**A. Fraud**

42. Plaintiff repeats and re-alleges the allegations expressed above as if fully set forth herein.

**Applicable Law**

## Legal elements required to be pled

43. Under applicable Code, common law, and Federal Circuit law defining Rule 9(b), without limitation, fraud is defined by the following legal elements; each is pled specifically, matching the specific legal element to specific factual allegations, legal element by legal element.

44. Under Applicable law, to prove fraud, "[a] plaintiff must prove '(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation.

45. Legal Element #1.  "A false representation". Specific factual allegations against Defendant include the following, and without limitation.

46. Defendant or Defendant agents falsely represented, sold, marketed, financed, or "monetized" recorded acreage in the Land Records for sale which it knew was not lawfully available for sale; Defendant knew that such acreage was already sold, already booked as owned by prior homebuyers or other interests.

47. Defendant effected such fraud or false premises, via Defendant' own statements or actions or unlawful inactions, or Defendant agents to include without limitation persons

named and found liable in a host of IRS proceedings all finding for Brud Rossmann on theft and casualty loss bases involving both his personal and real property and related expectancies, cognizable intangibles under Publication 946 and otherwise cognizable property for purposes of the pled claims.

48. Cyberspace means were used in connection with ground level means to effect such fraud or false premises.

49. Among other fraud or forgery or other theft effected by defendant via cyberspace or ground level means, defendant as individual or in agency falsely represented that prefunding and overfunding of insurance and tax escrow were required for settlement of various transactions – real property acquisition, refinancing, financing, or resale of such property.

50. Defendant as principal or in agency falsely reported and otherwise misreported that this escrowed money was available for taxes and insurance payments when Defendant moved the monies around, to different accounts, and began a Ponzi Scheme (official IRS finding); the escrowed money was not available and not used for the agreed escrow purposes.

51. The scaled multiples of such escrow monies are documented at an estimated 19,000x multiple to funded

escrow, such escrow overfunded by Brud Rossmann, and on the willful and intentional fraudulent or otherwise false representations of Defendant as principal or in agency.

52.     The multiples in capitalization are found in the Land Records of Fairfax County, Virginia, CPAN accessible online, exhibits found in the prior lawsuits of Brud Rossmann, several such claims paid in settlement but on limited information and at pennies on the dollar, DTA reporting online, in IRS rulings and findings in connection with several Theft and Casualty loss based refund claims paid to Brud Rossmann, and many other official and third party records, some since destroyed on the unlawful actions or unauthorized actions of certain third parties in Suffolk County, NY, (e.g. 5/17/2012 destruction of several bins of critical records, and about ½ terabyte of data in data backup CDs, about 50% of which was relevant), proof of the multiples at such extreme levels, and beyond are well evidenced.

53.     Each dollar of Brud Rossmann's was turned into approximately $19,000 or more on some accounting applications, and the related real value in terms of easy loan money during the Real Estate bubble or as stepped up tax bases under Power of Attorney abuse, investment fund

17

vehicle management authority abuse, or other abuses of authority.

54. Cyberspace or cybersecurity services fraud, forgery, tax fraud specifically and other misrepresentations in Brud Rossmann's name, as though Brud Rossmann effected such fraud, or was the Bad Actor driving such fraud, forgery or other theft, were pervasive throughout the entire time period when such theft was effected.

55. Defendant, as principal, or in agency, falsely represented that the authority of other Defendant entities such as Defendant's spouse, significant other, business partner, or others acting under apparent or actual authority under principal-agency doctrine, were his or her to assert, or vice versa, switching and swapping, one Defendant or person using another's authority, or the other persons involved asserting the authority of the Defendant.

56. As principal or in agency, Defendant also falsely represented the state of escrow and other accounts in Plaintiff's name, concealing the splitting, re-leveraging, and other unlawful Ponzi Scheme activities of Defendant (official IRS finding, 2011), making detection and earlier legal action impossible.

57. Legal Element #2. "Made in reference to a material fact". Specific factual allegations against Defendant include the following, and without limitation.

58. The misrepresentation of available acreage for financing, or other monetization, when it was already-spoken-for acreage, not for sale or other monetization, and as further leveraged, refinanced, marketed, or monetized by Defendant in principal or agency to the prejudice and other injury or harm of Plaintiff and his neighbors, was clearly a "material fact".

59. Defendant's false representations also related often, repeatedly, and over the full time period, Y2000 to Y2012 and beyond, to misstated escrow balances of tax and insurance monies -- cash monies booked and accounted under GAAP and tax accounting rules under Brud Rossmann's name -- that triggered tax or loan account delinquencies and related foreclosure proceedings all to the prejudice, harm or other injury of Brud Rossmann.

60. On all reporting from all sources, though there was no final foreclosure on Brud Rossmann's real property, Defendant otherwise "illegally" converted or misappropriated the Seminal Transaction funding by Plaintiff on or about September 7, 2000, the Escrowed Taxes

and Insurance, into a "Ponzi Scheme".

61. Defendant as principal or in agency hid, concealed, or otherwise unlawfully denied settlement, escrow and tax reporting due to Plaintiff which both (i) concealed the Ponzi Scheme of Defendant, and (ii) precluded a timely assertion of Plaintiff's rights – while Defendant interests continued to "play the market" with Plaintiff's money, driving the multiples into an estimated millions of dollars in value, very quickly. The Real Estate bubble facilitated the conversion of Brud Rossmannn's minor cash balances at about $170,000 paid in cash into millions of dollars of stolen and lost value.

62. Personal property of Brud Rossmann's was stolen concurrently.

63. Such proceeds were stolen by Defendant, when Defendant was fully noticed that (i) the escrowed funds were to used immediately and only for tax and insurance obligations, and (ii) any surplus or resulting proceeds were due to Plaintiff Pro Se. Instead, Defendant stole these monies at the beginning, the resulting proceeds – the Defendant "Ponzi Scheme" found by the IRS.

64. When the Ponzi Scheme balances flowed from accounts sited in this jurisdiction, as well as applicable-sited and